

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

UNITED STATES OF AMERICA

v.

BRIAN TATE,
    a/k/a "B-Tate,"

    Defendant.

No. 2:20-cr-90-6

## STATEMENT OF FACTS

By signing below, the parties and their respective counsel agree that if this case had gone to trial, the government's evidence would have established the following facts beyond a reasonable doubt:

1.      From in or about 2012 until December of 2017, the defendant, BRIAN TATE, conspired with Jaquate Simpson, Landis Jackson, Patrice Farland, Shafter Manuel, Mario Love, and others both known and unknown, to knowingly and intentionally manufacture, distribute, and possess with intent to manufacture and distribute over five kilograms of cocaine, a Schedule II controlled substance.

2.      The defendant's primary role in the conspiracy was to operate a drug distribution center for a drug trafficking organization based in central North Carolina (the Simpson DTO). The Simpson DTO supplied cocaine to another drug trafficking organization based in Norfolk, Virginia (the Beale DTO), from 2012 until 2016. The defendant would regularly receive wholesale quantities of cocaine. The defendant received as much as one kilogram of cocaine in a single transaction to redistribute through the Simpson DTO. Often, the defendant would "break down"

1

larger quantities of cocaine and distribute the drugs to lower-level dealers, who would in turn distribute the drugs to users in the community. The defendant regularly asked co-conspirator Jaquate Simpson, who led the DTO, to resupply him with additional cocaine. The defendant would also receive smaller shipments of marijuana from Simpson, which he resold using members of the Simpson DTO.

3.      On October 25, 2017, the defendant distributed 405 grams of powder cocaine to separately prosecuted co-conspirator Jarvis Powell. The police arrested Powell, and the defendant called Simpson to inform him of the arrest. In a wiretapped call, Simpson instructed the defendant to clean out the distribution center because the police might return with a search warrant. The defendant indicated he had already cleaned everything out immediately after Powell's arrest. On one wiretapped call, the defendant expressed his frustration to Simpson that he had lost "twelve racks"—referring to $12,000 in drug proceeds. Simpson consoled the defendant, saying, "Boy, I took a hundred and twenty grand loss last year, don't worry 'bout that loss … You gotta take a loss to become a boss."

4.      On October 27, 2017, Simpson told the defendant that they needed to get Jarvis Powell out of jail so that they could find out what the police were asking him. Simpson said, "We need to bail Jarvis out and see what the f*ck he, they saying." Simpson and the defendant then discussed the money that would be needed to post bond for Powell, and the defendant agreed to supply half the money for the bond.

5.      Simpson and the defendant continued to worry that their associates might "snitch" on other members of the Simpson DTO. In another wiretapped conversation on September 7, 2017, Simpson and the defendant talked about separately prosecuted co-conspirator Penny McCrimmon,

2

who was moving large amounts of cocaine at the time for the Simpson DTO. The defendant stated, "Penny ain't gonna change," and Simpson agreed: "But that's going to be my downfall, man … I been f*cking with her for fourteen years, man, like she always man, I done pistol whipped her, knocked her eye out … shot her baby daddy, like I'm always here, she always bring the thug out of me, man." The defendant then stated, "'Cause all it takes her … opening her mouth, know what I mean…"

6.      In another wiretapped conversation on December 6, 2017, Simpson told the defendant how he would respond to threats of violence to the Simpson DTO: "Nig*as don't want me out here ridin' … all that sh*t they doin' …. Yeah, I'm talking about motherf*ckers definitely goin' to funerals …. If you can hit 'um in the arm, you can hit 'um in the head. That's my M.O." Simpson and the defendant then discussed how the combination of drug dealing and violence invited the attention of law enforcement. Simpson stated, "And then with you havin' the violence, with us havin' the violence cases, when you catch the dope case with it, it's Federal …. Once you violent, and then you catch some yay [referring to narcotics] … you can go to Fed …. you can't be violent and be hustlin', you gotta pick. 'Cause the Feds'll pick it up."

7.      In another wiretapped conversation on December 10, 2017, Simpson and the defendant talked about selling marijuana, referring to a certain strain of marijuana as "vanilla." Simpson said, "I'mma be the only one on the east coast with the vanilla. I'm gettin' two hundred pounds of that the first week of February. So this gonna hold us over. I got all my crops right. It's over now … It's over, so the crop game over, so go on ahead and get your weed people." The defendant asked what the price per bag was going to be, and Simpson said they would start with $2,650 but that the defendant should be able to sell it for $2,830.

3

8.      On December 14, 2017, the defendant possessed with the intent to distribute 110 grams of cocaine, 3 grams of marijuana, and $679 cash of Simpson DTO drug proceeds.

9.      The acts taken by the defendant in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case, nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: _____
Joseph DePadilla
Andrew Bosse
John F. Butler
Assistant United States Attorneys
Kristin G. Bird
Special Assistant United States Attorney

4



After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Brian Tate, Defendant

I am the attorney for defendant. I have carefully reviewed the above Statement of Facts with him. His decision to enter into this factual stipulation is knowing, intelligent, and voluntary.

_____
David M. Good, Esq.
Defense Counsel